Jerry Joe KIDD, Appellant,

v.

William R. PERKINS, Appellee.

No. 11984.

Court of Civil Appeals of Texas, Austin.

Dec. 20, 1972.

Rehearing Denied Jan. 10, 1973.

J. Patrick Hazel, Gibbins & Spivey, Austin, William N. Ambler, Dallas, for appellant.

Bob Gibbins, Gibbins & Spivey, Austin, Charles J. Winikates, Dallas, for appellee.

SHANNON, Justice.

This is an appeal from a judgment overruling the plea of privilege of Jerry Joe

Kidd and sustaining the plea of privilege of Billy S. Kidd, and pertains to Art. 1995, Sec. 9a, Vernon's Tex.Rev.Civ.Stat.Ann.

William R. Perkins, individually and as next friend of his minor daughter, Suzanne Perkins, sued Jerry Joe Kidd and his father, Billy S. Kidd[1] in the District Court of Williamson County for injuries received by Suzanne in a collision between an automobile in which she was a passenger and another automobile owned by Billy and driven by Jerry Joe. That collision occurred in Williamson County, but both Kidds were residents of San Saba County, and each filed pleas of privilege to be sued there. Perkins filed controverting affidavits alleging that Jerry Joe negligently drove the automobile and that such negligence proximately caused Suzanne's injuries in Williamson County, and that the son's negligence was imputed to the father. After a hearing without a jury, the court overruled the plea of privilege of Jerry Joe, and sustained that of Billy. The cause of action against Billy was severed and transferred to San Saba County. No findings of fact or conclusions of law were requested or filed. We will affirm the judgment.

Jerry Joe relies primarily on his point of error that Perkins " . . . failed to establish by a preponderance of the evidence facts necessary to constitute a prima facie cause of action."

Perkins pleaded that Jerry Joe was guilty of several acts of negligence which proximately caused the collision, some of those being improper lookout, excessive speed, failure to timely apply the brakes, and failure to sound the horn.

The collision occurred on Sunday evening, September 5, 1971, on State Highway 29, less than one mile east of the limits of Georgetown. Suzanne was riding in a MG driven by a friend, Donald Hoyt Brown. Their destination was the golf course where they planned "to walk around."

Brown passed the driveway to the golf course by mistake, and immediately before the collision he was preparing to turn left into a drive and then return to the golf course entrance. Those preparations, he said, consisted of slowing down and turning on the left turn indicator. Brown claimed that he did not drive off of the pavement to the right prior to the collision. He did not remember hearing a horn sound from behind prior to turning, nor did he remember seeing any headlights.

The other automobile in the collision was driven by Jerry Joe and his passenger was William Donald Linn. Though the record is not very clear, it seems that Jerry Joe was enroute to College Station from San Saba where he had spent the weekend with his parents. Linn testified that although their usual departure time from San Saba was three or four in the afternoon, on this occasion they left after five.

Jerry Joe said that as he drove through Georgetown he did not recall his speed, but he was certain that he was "doing the speed limit." This was so, he said, "Because I was checking my speed all the way, because I knew it was a bad week-end since policemen would be out on the highway." As he left the limits of Georgetown, he saw the MG ahead. At different points he testified as to the distance between him and the MG when he first saw it, those estimates varying from three hundred yards to six hundred yards. He estimated that his speed at that time was fifty-five to sixty-five miles per hour, although it seems that he told the policeman immediately after the collision that the speed was sixty-five. The MG was driving more slowly than Jerry Joe and he steadily gained. When he was about one hundred yards from the MG he noticed its turn signals blinking. He at first testified that it was the right turn signal, but at another point he said that it was the left turn signal which was blinking. When the turn signal began blinking, Jerry Joe said that

1. Jerry Joe Kidd is the minor son of Billy S. Kidd. For convenience, in this opinion, the given names of each will usually be employed.

the MG turned to the right partially off the pavement and was either stopped or moving very slowly. At this time, or at no other, did he sound his horn.

When he saw the turn signals of the MG, Jerry Joe was about ninety yards from the MG and he said that he took his foot from the accelerator and gently applied the brake and then released the brake. This action slowed his car down to perhaps fifty-five miles per hour. The MG then turned to the left and Jerry Joe also turned to the left and applied the brakes in an effort to avoid the collision. The impact knocked the MG to the right and off the pavement some five to ten yards away from the point of the collision.

 Although the Perkins' case was not as fully developed as perhaps it could have been, still we are satisfied that there is evidence in the record of one or more acts of negligence and causation to support the judgment of the trial court. This conclusion is supported by the fact that no findings of fact and conclusions of law were requested or filed. When findings of fact and conclusions of law are not requested or filed, the judgment should be affirmed if possible in any legal theory that finds support in the evidence. Bishop v. Bishop, 359 S.W.2d 869 (Tex.1962).

 Perkins claims that the court erred in sustaining the plea of privilege of Billy for the reason that the negligence of Jerry Joe was imputed to Billy.

The only pleading of Perkins with respect to the negligence of Billy follows:

"That Defendant, Billy S. Kidd, owned the vehicle which was driven by his minor son, Jerry Joe Kidd; that Defendant, Jerry Joe Kidd, was driving such vehicle from the family home back to his school, which was a mission in furtherance of his moral, intellectual and material welfare in which mission Defendant, Billy S. Kidd, had a direct interest. That the negligence of Defend-

ant, Jerry Joe Kidd, is therefore imputed to Defendant, Billy S. Kidd."

The facts pertinent to this allegation are that the Chevrolet driven by Jerry Joe was purchased by and registered in the name of Billy. Billy bought the automobile primarily for the use of Jerry Joe in returning to and from college, as he came home nearly every weekend since there was nothing much to do at Texas A & M. The automobile was in good condition at the time of the collision. Though the record is not as clear as it should be, it appears that Jerry Joe was returning to Texas A & M at College Station when the collision occurred.

Perkins was not asserting liability as to the father on the theory that he negligently entrusted his son with the automobile, but rather Perkins claims that Jerry Joe was acting as agent of his father at the time of the collision. This was so, Perkins says, for the reason that the trip back to college was, in the loose language of Trice v. Bridgewater, 125 Tex. 75, 81 S.W.2d 63 (1935), in furtherance of his "moral, intellectual and material welfare" in which the father had a direct interest.

We are of the opinion that this case is controlled by Moore v. Hoover, 150 S.W. 2d 96 (Tex.Civ.App.1941, no writ). In that case a son was involved in a collision while driving his father's automobile enroute to Austin to enroll in the University of Texas. The son was named defendant as was the father, the argument being that as the son was entering the University for intellectual training and betterment, and as the father was interested in the education of his son, the son was thus shown to be the agent of the father. In rejecting this argument, the court said:

". . . There is no doubt a moral obligation on the part of the parent to furnish his child a college education, if it is within his means, however, there is no legal obligation to do so. There is no business benefit or material advantage derived by the parent in having his child

obtain a college degree. It cannot be the law that a child, in going to and returning from college and during all the time he is in college, is the agent of his parents in everything he may do in the furtherance of his education."

Perkins relies upon Smith v. Cox, 446 S.W.2d 52 (Tex.Civ.App.1969, writ ref'd n. r. e.). There Alicia Smith, a minor, drove her father's car to take her mother to work during the morning. She then drove to school. After school and enroute to pick up her mother an accident occurred. Under those facts the court held as a matter of law that Alicia was acting as an agent for her father. The court said:

"In the present case, there is no suggestion that Alicia was driving the car for her own pleasure and purposes. It is undisputed that she was furnishing transportation for her mother, who in using the car was not engaged in personal pursuit of pleasure but was furnishing income for the community estate of herself and her husband, all with the knowledge and approval of W. R. Smith. Such facts, added to the fact that Alicia had used the car for school registration and to get her school books, established as a matter of law that at the time of the accident Alicia was operating the car both in furtherance of a particular mission for her father, and also a business mission involving the moral, intellectual and material welfare of the child in which matter the father had a direct interest, and that appellant W. R. Smith was responsible for injuries proximately caused by her negligence under the doctrine of respondeat superior."

The primary basis for the court's holding was that at the time of the collision Alicia was enroute to pick up her mother in furtherance of a particular mission for her father. The recitation that Alicia had used the car to go to school earlier in the day was unnecessary to the holding that she was acting as agent for her father at the time of the collision.

Jerry Joe's other point of error is that since he claims that Perkins' cause against him and his father is "joint", and since his father's plea of privilege was sustained and that cause of action transferred to San Saba County, the cause asserted against him must also be transferred to San Saba County. The attorneys for Jerry Joe Kidd supplied no pertinent authority in support of this point, and after consideration, we are of the opinion that it is not meritorious.

The judgment is affirmed.

Affirmed.